# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

**BRITTANY PHILLIPS,**
**AMBER NORENO-**
**MIDDLEBROOKS,** and
other similarly-situated individuals,

            Plaintiff,

v.

**TELENETWORK PROPERTIES,**
**LTD.**, d/b/a **TELENETWORK**,

        Defendant.

_____

Case No.: _____

HON. _____

<u>JURY TRIAL DEMANDED</u>

## <u>COLLECTIVE AND CLASS ACTION</u> <u>COMPLAINT WITH JURY DEMAND</u>

Plaintiffs, Brittany Phillips and Amber Noreno-Middlebrooks, individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant teleNetwork Properties, doing business as teleNetwork (hereinafter referred to as "teleNetwork" or "Defendant"), and state as follows:

## <u>INTRODUCTION</u>

1.  This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, Brittany Phillips and Amber Noreno-Middlebrooks (hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's

willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. and breach of contract under the common law.

2.      Defendant employed Plaintiffs as hourly at-home call center employees, called customer service representatives ("CSRs").

3.      The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses, which are prevalent in the industry.

4.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

5.      More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

6.      Defendant failed to pay Plaintiffs and all similarly situated employees for their pre-shift time spent booting up their computers, logging into required

computer networks and software applications, and reviewing work-related e-mails and other information at the start of their shift.

7.     Defendant also failed to pay Plaintiffs and all similarly situated employees for their post-shift time spent shutting down, logging out of required computer networks and software applications, and reviewing work-related e-mails and other information at the end of their shift.

8.     Finally, Defendant failed to compensate Plaintiffs and all similarly situated employees for mid-shift down time incurred due to technical problems with their computers, networks, programs/applications, and phones.

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq*.

10.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

11.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's

CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

12.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members are citizens of different states.

13.     A private party may also bring an action for damages for breach of contract under the common law.  Plaintiffs' breach of contract claims originate from the same facts that form the basis of their federal claims.  Thus, the court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

14.     This Court has personal jurisdiction over Defendant because it does business within the state of Georgia.

15.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs CSRs in this district, conducts business in this district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## PARTIES

16.     Plaintiff, Brittany Phillips, is a resident of Forest Park, Georgia, and was employed by Defendant as an hourly CSR from approximately September 12, 2016 to October 5, 2016.  Ms. Phillips signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit A*.

17.     Plaintiff, Amber Noreno-Middlebrooks, is a resident of Atlanta, Georgia, and was employed by Defendant as an hourly CSR from approximately April 4, 2016 to September 26, 2016.  Ms. Noreno-Middlebrooks signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit B*.

18.     Defendant is a Texas corporation with its headquarters in New Braunfels, Texas.  Defendant is registered with the State of Texas with a registered office address of 415 Mountain Laurel Drive, New Braunfels, Texas 48132-3273 and its registered agent is Anthony Herrera.

19.     Defendant's website states: "Our mission is simple – create customer experiences that lead to better relationships.  We believe that putting the customer first and always being accountable is how you gain trust and loyalty.  No scripts, no robots, just answers from courteous and knowledgeable professionals who have your customer's best interest in mind.  Partner with teleNetwork and improve your customer experience." See https://www.telenetwork.com/mission/ (last visited on January 26, 2017).

20.     Upon information and belief, Defendant employs hundreds, if not thousands, of CSRs across the country.

## GENERAL ALLEGATIONS

21.     While employed by Defendant, Plaintiff Brittany Phillips was paid at a rate of $10.00 per hour.

22.     While employed by Defendant, Plaintiff Amber Noreno-Middlebrooks was paid at a rate of $10.25 per hour.

23.     Defendant's *Policy Handbook Acknowledgement Form*, which all CSRs are required to sign, states that "compliance with all teleNetwork policies is a condition of my employment with teleNetwork."  This document is in Defendant's possession.

24.     As CSRs for Defendant, the Plaintiffs assisted Defendant's clientele by troubleshooting technical issues and answering their questions. According to Defendant's *Employment Status and Hourly Requirement for Insurance Benefits Acknowledgement Form*, full-time CSRs employed by Defendant "must work at least 120 hours per month, not including lunch breaks."  This document is in Defendant's possession.

25.     According to Defendant's *Work at Home Memorandum of Agreement*, which all CSRs are required to sign, Defendant classifies their CSRs into four job titles: Technical Support Representative, Customer Support Representative,

Customer Account Specialists, and/or Customer Care Representatives. All CSRs "[s]erve as the primary contact for residential and small business customers." This document is in Defendant's possession.

26.     Regardless of the specific position(s) in which the CSRs work, all of Defendant's CSRs use similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications are integral and an important part of the CSRs' work and they cannot perform their jobs without them.

27.     Defendant requires its CSRs to meet the following minimum computer requirements: a desktop or laptop PC (No Mac Computers); 2Ghz Dual Core Processor, or higher; 3GB RAM, or more installed; 15" or larger monitor; a webcam; a USB headset; Cable, DSL, or Fiber ISP over 2Mb/s Download & 1 Mb/s Upload (No WISPS, 3/4G, Hotspots, etc.); and the ability to directly connect to ISP via Ethernet (no wireless connections).

28.     According to Defendant's *Work at Home Memorandum of Agreement*, all CSRs are "expected to read and abide by the policy handbook and will be held to the same standards as in-house technicians." This document is in Defendant's possession.

29.     The *New Hire* Packet, provided by Defendant to all CSRs, states that connection to Defendant's VPN (via Cisco AnyConnect) is required to access

Defendant's network database and work tools.  This document is in Defendant's possession.

30.     The *New Hire Packet* also states that the Avaya Soft-phone is required for all "Work At Home (Remote) agents" and the chat-program "Spark!" is required for all CSRs because it is used to communicate with "the training staff, supervisors, and your future team."  This document is in Defendant's possession.

31.     In order to perform their job, Plaintiffs, and those similarly situated, were required to boot up and log in to various computer networks, software programs and applications, including those referenced above, in order to access information necessary to perform their job functions.  The pre-shift boot-up/log-in process took substantial time on a daily basis ranging from sixteen (16) to twenty-six (26) minutes per day, and even longer on days where Defendant's computer networks and programs were not working properly.

32.     However, Plaintiffs, and those similarly situated, were not actually "clocked in" for their shifts until after the computer boot-up/log-in process was complete, meaning that Plaintiffs and all other CSRs worked at least sixteen (16) to twenty-six (26) minutes each shift for which they were never compensated.

33.     The pre-shift off-the-clock time Plaintiffs and all other CSRs spend booting-up/logging-in to their computers directly benefited Defendant.

34.     The pre-shift boot-up/log-in process was an integral and indispensable part of Plaintiffs' job responsibilities as CSRs.

35.     Additionally, at the end of the day, Plaintiffs and all other CSRs were required to log out of the time keeping system before shutting down their computers, which resulted in additional unpaid off-the-clock work.

36.     The post-shift work performed after disconnecting from Defendant's network and logging out of the timekeeping system took between five (5) and eight (8) minutes at the end of each shift.

37.     The post-shift off-the clock time Plaintiffs and all other CSRs spend logging out/shutting down directly benefited Defendant.

38.     The post-shift logout/shutdown process was an integral and indispensable part of Plaintiffs' job responsibilities as CSRs.

39.     Despite knowing Plaintiffs and other CSRs performed work before and after their scheduled shifts, Defendant and its managers failed to make any effort to stop or disallow this pre- and post-shift work and instead suffered and permitted it to happen.

40.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and other CSRs booted up and logged into their computers and logged out and shutdown each day and the time they logged into their telephone systems.

41.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and other CSRs experienced down time due to technical issues.

42.     Despite its ability to track the amount of time Plaintiffs and other CSRs spent in connection with the pre-shift boot-up/log-in process and post-shift shutdown/log-out, and technical downtime, Defendant failed to pay Plaintiffs and other CSRs for the off-the-clock work they performed each shift.

## A.     Pre-Shift Off-the-Clock Work

43.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs are required to start up and log into various secure computer programs, software programs, and applications in order to access information. The pre-shift startup and login process takes substantial time on a daily basis with said time ranging from sixteen (16) and twenty (26) minutes per day, or even longer when technical issues arise.  Before clocking in, Plaintiffs and each CSR must undertake the following essential work tasks in chronological order:

- First, CSRs must turn-on/warm-up their computer. ***This process takes between one (1) to two (2) minutes at the beginning of each shift***.

- CSRs then open an application to access Defendant's Virtual Private Network (VPN), called "Cisco AnyConnect," which requires that they enter in a username and password. ***This generally takes between three (3) and five (5) minutes at the beginning of each shift***.

- After entering their username and password, and establishing a connection to Defendant's general VPN, the CSRs must choose

between two different network systems, the blue network or purple network system. After making a selection, this causes an additional wait while the CSRs connected to either the blue or purple network system. ***Depending on the strength of the internet connection (and other variables) this step generally takes the Plaintiffs and other CSRs an additional four (4) to six (6) minutes***.

- Next, the CSRs open Google Chrome and enter a username and password in order to access the web-based application called "Knowledge Base." This step also allows the CSRs to open up "Google Hangouts" and their email. ***This process takes between two (2) and three (3) minutes.***

- From within Knowledge Base, the CSRs are then required to open up a number of other applications utilized to assist callers, such as: Spark (chat application), CRM (database that provides information on callers), calculator app, cell-phone trouble shooting tool, Jira (internal trouble shooting app), and HLR. Many of these programs required the CSRs to reenter username and passwords. ***This process takes between five (5) and eight (8) minutes.***

- Next, the CSRs are required to open the Avaya phone application. At this point, the CSR is automatically placed into "idle" status. ***This step takes less than one (1) minute***.

- Finally, the CSRs open Defendant's timekeeping system, "Tracker" and enter their employee identification number. At this point, the CSRs start getting paid. The CSRs then go back to Avaya and change their status from "idle" to "available" to begin receiving calls. ***This process takes between one (1) and two (2) minutes***.

44. Defendant's CSRs complete this process before each shift; however, they are not actually "clocked in" for their shifts until *after* they start-up their computer, open the essential VPN program/application, enter their credentials (password and username), establish a connection to Defendant's VPN, open several

essential web-based programs, log into their phone system, and change their status to "available" to take calls.

45. As a result, Plaintiffs and other CSRs spent between sixteen (16) and twenty-six (26) at the beginning of each shift performing off-the-clock (uncompensated) work for Defendant.

46. The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other CSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### B.    Post-Shift Off-the-Clock Work

47. Pursuant to Defendant's policies, training and direction, Plaintiffs and all other CSRs are required to shut down and logout of certain computer programs and applications they used during their shift *after* they log-out of Defendant's timekeeping system.  The post-shift logout and shutdown process takes substantial time on a daily basis with said time ranging from five (5) to eight (8) minutes per shift.

48. At the end of the day, after removing themselves from the Avaya "available" status,   the Plaintiffs and other CSRs must complete the following essential work activities in chronological order:

- First, after clocking out and making themselves "unavailable" to take calls, the CSRs are required to review any e-mails with work instructions and/or

data that they were unable to review while taking calls. Generally, ***this step takes between two (2) to three (3) minutes per shift.***

- Next, the CSRs are required to log-out the following programs: Spark! (chat application), CRM (data base that provides information on callers), calculator app, cell-phone trouble shooting tool, Jira (internal trouble shooting app), HLR, and Knowledge Base. ***This process takes between two (2) to three (3) minutes.***

- The CSRs then disconnect and close down their connection to Defendant's VPN. ***This process takes under one (1).***

- Finally, the CSRs are required to shutdown/put-to-sleep their computers. ***This process takes between one (1) to two (2) minutes***.

49. Pursuant to the above process, Defendant fails to pay Plaintiffs and other CSRs for between five (5) to eight (8) minutes of off-the-clock work performed each shift.

50. The unpaid post-shift off-the-clock work performed by Plaintiffs and other CSRs at the end of each shift directly benefits Defendant and the tasks undertaken in connection with the post-shift off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

## C. Exemplary Pay-Period to Illustrate Pre- and Post-Shift Compensation Deficiencies

51. An example of a specific workweek where Defendant failed to pay Plaintiff Brittany Phillips all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

**Pay Period of 9/16/16 to 9/30/16**

- Plaintiff worked 75.02 hours and was paid at a rate of $10.00 per hour for the first 40 hours of each workweek and $15.00 per hour for each hour over 40 in the workweek.

- Plaintiff's paystub reflects that she was paid for 0.71 hours of overtime at a rate of $15.00 per hour, meaning that she worked over 40 hours in at least one of the two workweeks in the pay period.

- With pre-shift time of 16-26 minutes per shift and post-shift time of 5-8 minutes per shift, Plaintiff should have been paid an additional 105 to 170 minutes at her overtime rate of $15.00 for each week.

***Exhibit C***, Phillips Pay Stub.

### D.   Technical Malfunction (Down-Time) Spent Off-the-Clock

52.    In addition to the off-the-clock time spent during the startup/login and shutdown/logout procedures outlined herein, Plaintiffs and Defendant's other CSRs frequently spent significant time waiting and assisting Defendant's technical support team in troubleshooting problems they encountered with the network and/or their computer systems and applications.

53.    When Plaintiffs and Defendant's other CSRs encountered technical difficulties with their networks, programs, phones, applications, and/or other programs they were required to change their status to "unavailable" and clock-out of Defendant's timekeeping system while they worked with the technical support team to correct the technical problems.  This often required CSRs to wait on hold for an appreciable amount of time.

54.     After the problem was corrected, Plaintiffs and Defendant's other CSRs were required to complete a work ticket that documented the technical issue. This form was also prepared off the clock.

55.     This off-the-clock time directly benefitted Defendant, was compensable time, and is a substantial element of damages in this lawsuit.

56.     Upon information and belief, Defendant maintains records that will illustrate the time spent by Plaintiffs and other CSRs working with the technical support team to correct problems with their computers, networks, phones, and/or programs/applications.

**E.     Defendant Benefitted from the Uncompensated Off-the-Clock Work**

57.     At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above described pre- and post-shift activities performed by Plaintiffs and other CSRs.

58.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiffs and other CSRs.

59.     At all relevant times, Defendant was able to track the amount of time Plaintiffs and the other CSRs spent in connection with the pre- and post-shift

activities however, Defendant failed to do so and failed to compensate Plaintiffs and other CSRs for the off-the-clock work they performed.

60. At all relevant times, Plaintiffs and the CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

61. At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the CSRs in order to pressure them into performing the pre- and post-shift off-the-clock work.

62. Defendant expressly trained and instructed Plaintiffs and its other CSRs to perform the above-described pre-shift activities before clocking into Defendant's timekeeping system and their shift's scheduled start time to ensure they were prepared to take calls at the moment their shift began.

63. At all relevant times, Defendant's policies and practices deprived Plaintiffs and the CSRs of wages owed for the pre- and post-shift activities they performed. Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

64. Defendant knew or should have known that the time spent by Plaintiffs and other CSRs in connection with the pre- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

65. Unpaid wages related to the off-the-clock work described herein is owed to Plaintiffs at the FLSA mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs regularly worked in excess of forty (40) hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

66. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly at-home customer service representatives who worked for TeleNetwork at any time in the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

67. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

68. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

69. Consistent with Defendant's policies and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid for all premium overtime compensation when they worked beyond 40 hours in a workweek.

70.     All of the work Plaintiffs and the members of the FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiffs and the FLSA Collective performed.

71.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

   a.     Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

   b.     Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for other off-the-clock work; and

   c.     Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendant.

72.     Defendant is aware, or should have been aware, that federal law required it to pay Plaintiffs and the members of the FLSA Collective an overtime premium for all hours worked in excess of forty (40) per workweek.

73.     Defendant's unlawful conduct was widespread, repeated, and consistent.

74.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. §

216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

75.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift startup/login time and the amount of post-shift logout/shutdown time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

76.     There are many similarly situated current and former CSRs who were underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

77.     Plaintiffs estimate the FLSA Collective, including both current and former employees over the relevant period, includes hundreds, if not thousands of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

### RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly at-home customer service representatives who worked for TeleNetwork at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend this definition if necessary.

79. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

80. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each session is compensable time;

b. Whether the post-shift time Rule 23 Nationwide Class members spend on shutdown and logout activities is compensable time; and

c. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract.

81.     Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.   Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

82.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and they retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

84.     This case will be manageable as a Rule 23 Class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that

will allow the class, wage, and damages issues in this case to be resolved with relative ease.

85.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

86.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

87.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

88.     At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

89.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

90.     At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

91.     Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

92.     Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

93.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

94.     At all times relevant to this action, Defendant required Plaintiffs and all the FLSA Collective members to perform twenty-one (21) to thirty-four (34) minutes of uncompensated pre- and post-shift work, per shift, and Defendant failed to pay these employees the federally mandated overtime compensation for all services performed.

95.     The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

96.     In workweeks where Plaintiffs and other Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime

should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

97.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for its CSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

98.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 Nationwide Class Action)

### <u>BREACH OF CONTRACT</u>

99.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

100.   At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendant.

101.   Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, has an hourly rate of approximately $10.00 to $12.00 per hour.

102.   Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid off-the-clock work that was required of them in connection with pre-shift, technical downtime, and post-shift work activities, described herein.

103.   By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

104.   Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims).

105.   Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

106. As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 National Class were damaged in an amount to be determined at trial.

107. These claims are appropriate for class certification under Rule 23(b)(2) and (b)(3) because the law of contracts is substantially the same in Georgia as it is in the other states from which the Plaintiffs reside.

WHEREFORE, Plaintiffs request the following relief:

a. An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count II);

c. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. An Order designating the Plaintiffs as representatives of the FLSA Collective and the Rule 23 Nationwide Class; and undersigned counsel as Class counsel for the same;

e. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An Order declaring Defendant's violations of the FLSA were willful;

g. An Order declaring Defendant breached its contracts with Plaintiffs and

the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

h.      An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs, the FLSA Collective, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

i.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

j.      An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

k.      An Order awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiffs, Brittany Phillips and Amber Noreno-Middlebrooks, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: January 26, 2017      Respectfully Submitted,

    <u>s/ V. Severin Roberts</u>
    Victor Severin Roberts
    Georgia Bar No. 940504
    Barrett & Farahany
    1100 Peachtree Street, NE
    Suite 500

Atlanta, GA 30309
T:  404-214-0120
E:  severin@justiceatwork.com

*Local Counsel for Plaintiffs*

Jesse L. Young (MI Bar No. 72614) (*pro hac vice anticipated*)
Charles R. Ash, IV (MI Bar No. P73877) (*pro hac vice anticipated*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
T: 248-355-0300
E: jyoung@sommerspc.com
E: crash@sommerspc.com

*Trial Counsel for Plaintiffs*